UNITED STATES *v.* SCHENKERS, INC. (No. 3241)[1]

---

[1] T. D. 43669.

United States Court of Customs and Patent Appeals, October 28, 1929

*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein* and *Peter A. Abeles*, special attorneys, of counsel), for the United States.
*Walden & Webster* (*Walter F. Welch* of counsel) for appellee.

[Oral argument October 16, 1929, by Mr. Lawrence and Mr. Welch]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The merchandise involved in this case consists of copper rollers intended, when properly engraved, to be used in printing or stamping designs on silk cloth. They were returned by the collector for duty at 40 per centum ad valorem under paragraph 399 of the Tariff Act of 1922, as "articles composed wholly or in chief value of metal."

The importer made protest claiming that they should be assessed at 35 per centum ad valorem under paragraph 372 of said act as unfinished parts of a textile machine. The Customs Court sustained the protest and entered judgment from which the Government has appealed to this court.

Paragraph 372 embraces many and varied articles. The immediate portion relied upon by appellee is—

* * * all other textile machinery or parts thereof, finished or unfinished, not specially provided for, 35 per centum ad valorem.

The pertinent part of paragraph 399, under which they were returned by the collector, reads:

Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated, * * * whether partly or wholly manufactured, 40 per centum ad valorem.

In this court the Government has invoked another paragraph under which it insists the merchandise should be classified, to the exclusion of both the paragraph fixed upon by the collector and that under which appellee claims, and asks us to hold applicable paragraph 396, which reads:

Print rollers and print blocks used in printing, stamping, or cutting designs for wall or crêpe paper, linoleum, oil cloth, or other material, not specially provided for, composed wholly or in chief value of iron, steel, copper, brass, or any other metal, 60 per centum ad valorem.

The only witness examined in the case was the assistant treasurer of the Oriental Silk Printing Co., the real party in interest, the importation having been made for it by appellee. He testified, in

substance, that the rollers in issue were imported for his company unengraved; that they would have to be engraved with the desired figure before they could be used; that after being so engraved they would be used in printing or stamping the figure upon silk cloth; that, as he understood the matter, similar rollers when engraved were used in printing figures upon cotton cloth, and that he knew of no other use to which they were, or are, adapted or applied.

The Customs Court in its opinion found and said:

It appears from the uncontradicted testimony of plaintiff's witness that the copper rollers in question are 64 inches long and 16 inches in circumference; that their sole use is in a silk printing plant for printing silk. It is further shown that after importation these rollers are engraved with a design or pattern that is imprinted on the finished material.

Since the record before us establishes that the exclusive use of these copper rollers is in textile printing machines we hold them to be properly dutiable at the rate of 35 per cent ad valorem under said paragraph 372 as parts of textile machinery not provided for, as alleged by plaintiff. See our ruling in Abstract 8117 on similar copper rollers.

The principal insistence of the Government here is that the merchandise in question falls under the *eo nomine* provision of paragraph 396, *supra*, which specifically mentions print rollers. The contention is that the importations are known as print rollers and have become dedicated to the only use for which they are manufactured.

The reasoning in two decided cases is invoked in support of the Government's contention, the first of which is *United States* v. *Lyon & Healy*, 4 Ct. Cust. Appls. 438, T. D. 33873. In that case certain pieces of wood, which had been advanced in manufacture to a state where it was clearly apparent that they could be used only for making violin or cello necks, were held to be "parts of musical instruments." That case apparently arose under paragraph 467 of the act of 1909, which provided for "musical instruments, *or parts thereof.*" (Italics ours.)

The second case is that of *United States* v. *Riga*, 171 Fed. 783, wherein the United States Circuit Court sustained the action of the Board of Appraisers, now the United States Customs Court, in holding certain metal pieces which had been advanced in manufacture to a state where nothing could be made from them except rifle barrels, to be classifiable and dutiable under paragraph 157 of the act of 1897 (the law then in force), which provided for "rifles *and parts thereof.*" (Italics ours.)

The principle applied in those two cases was that where a material has been so advanced in manufacture as to have reached a stage in which it is clearly incapable of being made into more than one article, then it shall be deemed, even though unfinished, to have been so dedicated to a single use as to fix its status as a part of that article.

We think this naked principle of law thus stated is sound, but is it applicable in the instant case?

It does not seem to us to be so.  Paragraph 396 provides for print rollers "used in printing."  The unengraved roller can not be so used, and the paragraph makes no provision for parts.  In the musical-instrument case and the rifle case, *supra*, the words "parts thereof" were expressly inserted.  In various paragraphs of the existing law, after mentioning specific articles, these words are inserted.  Did paragraph 396 read "print rollers, and parts thereof," we would be confronted by a different question.  But since Congress did not itself insert the words we must assume it did not wish parts to be included, and we have no authority to read them into the statute. We therefore decline to hold paragraph 396 of the act of 1922 applicable to these unfinished rollers.

Where, then, do they belong?

The collector assessed them under paragraph 399 as "articles composed wholly or in chief value of metal."  The question is whether there is any paragraph which is more specific.  Appellee points to the language of paragraph 372, which reads:

* * *  all other textile machinery or parts thereof, finished or unfinished, not specially provided for.

In the ordinary course of practice, the particular unengraved rollers involved become, when further processed by engraving, parts of a mechanism for printing designs upon cloth—in this case silk.  They fall, therefore, within the classification of "parts of textile machinery." Paragraph 372 says "parts * * * *finished or unfinished*, not specifically provided for."  (Italics ours.)  Under our view they are not, in their unengraved condition, as imported, "specially provided for" in 396, and no other part of the law is suggested as covering them, except these three paragraphs.  Paragraph 372 seems to be more specifically applicable than 399.

Under the view taken it is unnecessary in this case to discuss the doctrine of *ejusdem generis*.

The judgment of the Customs Court is *affirmed*.